

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-23-2008

# Gerard v. Bridge Cap Usvi LLC

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3194

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Gerard v. Bridge Cap Usvi LLC" (2008). *2008 Decisions.* Paper 986.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/986

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3194
_____

FRANDELLE L. GERARD,

Appellant

v.

BRIDGE CAPITAL (USVI), LLC;
ATLANTIC NORTHSTAR, LLC

On Appeal from the District Court
for the Virgin Islands, Division of St. Croix
(D.C. No. 04-cv-00136)
District Judge:  Honorable Harvey Bartle, III
_____

Submitted Under Third Circuit LAR 34.1(a)
May 8, 2008

Before: RENDELL, FUENTES, and CHAGARES, <u>Circuit</u> <u>Judges</u>

(Filed June 23, 2008)

OPINION OF THE COURT
_____

CHAGARES, Circuit Judge.

This is an employment discrimination action arising under 42 U.S.C. § 1981. Frandelle L. Gerard appeals the District Court's July 9, 2007 order granting the motion for summary judgment by appellees Bridge Capital (USVI), LLC and Atlantic Northstar, LLC.[1] For the following reasons, we will affirm.

I.

As we write only for the parties, our recitation of the facts is brief. In March 2004, Atlantic Northstar hired appellant Frandelle Gerard, a black woman born in St. Croix, Virgin Islands. Gerard's primary responsibilities included identifying real estate properties for purchase in the U.S. Virgin Islands and negotiating purchase and sales contracts. Gerard received good performance reviews, but Atlantic Northstar terminated her in August 2004 due to "financial constraints." Appendix (App.) 36.

According to Hoolae Paoa, the CEO of Atlantic Northstar, the company decided to discontinue its real estate development business in the U.S. Virgin Islands following economic changes in the summer of 2004, and as a result, "entered a liquidation phase." Id. at 42. Paoa explained that the principals of Bridge Capital, an international lending firm, had formed Atlantic Northstar in October 2003 to invest in real

_____

[1] Although Gerard also sought damages for race and national origin discrimination under Virgin Island Civil Rights Law, 10 V.I.C. § 3, her appeal brief focuses only on 42 U.S.C. § 1981. As a result we will only address her federal claim. In addition, the complaint initially alleged violation of the Virgin Islands Wrongful Discharge Act, 24 V.I.C. § 76, but the District Court dismissed that claim on September 1, 2005, before the summary judgment motion. That dismissal is not challenged in this appeal.

2

estate in the Virgin Islands. Once the company changed its investment strategy, it "no longer had a need for" Gerard's "unique talents . . . specifically, her ability to locate undervalued Virgin Islands properties for affiliates of the company to purchase and her network of local contacts for development and/or renovation of those VI properties." Id.

A few months before Gerard was terminated, Atlantic Northstar reassigned Deborah Bishop, a white woman from the mainland United States, to its office in St. Croix. Bishop had previously worked for other companies owned by the principals of Atlantic Northstar. The parties dispute Bishop's start date in St. Croix, her job title, and her responsibilities. It is clear that Bishop assumed at least some of Gerard's duties after her termination. According to Gerard, her files were given to Bishop after she left, and Bishop took over many of her responsibilities. Atlantic Northstar asserts, however, that while Bishop assumed some of the clerical duties that Gerard once performed, no one took over Gerard's primary responsibility of identifying and purchasing U.S. Virgin Islands property, because the company was no longer engaged in that business. In addition, Paoa and two Crucian[2] employees took over the limited task of managing local properties during liquidation.

Gerard filed a discrimination and wrongful discharge complaint against Bridge Capital and Atlantic Northstar on October 19, 2004, claiming that Atlantic Northstar terminated her "because of her race and ethnic identity." Id. at 16. Gerard also

---

[2]The term "Crucian" refers to a person from St. Croix.

3

claimed that "Atlantic's sister corporation, defendant Bridge Capital . . . participated in the discrimination." Id. After discovery, Bridge Capital and Atlantic Northstar moved for summary judgment. On July 10, 2007, the District Court granted the motion and entered judgment in favor of Bridge Capital and Atlantic Northstar. This appeal followed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction over this appeal from the District Court's final judgment and order pursuant to 28 U.S.C. § 1291. When the District Court grants a motion for summary judgment, "we exercise plenary review." DL Res., Inc. v. FirstEnergy Solutions Corp., 506 F.3d 209, 216 (3d Cir. 2007). Summary judgment is appropriate when "'there is no genuine issue as to any material fact,'" and "'the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). We "resolve all factual doubts and draw all reasonable inferences in favor of [appellants]." DL Res., Inc., 506 F.3d at 216.

## III.

Gerard contends that the District Court erred in holding that she failed to offer evidence to rebut Atlantic Northstar's alleged nondiscriminatory reason for firing her. According to Gerard, the court failed to address why Atlantic Northstar terminated her, instead of a similarly-situated white worker, Deborah Bishop. Gerard argues that

"[t]here is sufficient evidence for a jury to find that Atlantic singled out Gerard for discharge because of her race and ethnic identity." Appellant Br. at 11. We disagree.

We evaluate Gerard's § 1981 claim under the familiar burden-shifting framework first articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). See also Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999) (applying McDonnell Douglas framework to claims under 42 U.S.C. § 1981); Stewart v. Rutgers, The State Univ., 120 F.3d 426, 432 (3d Cir. 1997).

Under the McDonnell Douglas framework, a plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination. McDonnell Douglas, 411 U.S. at 802. If the plaintiff succeeds in establishing a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's termination. Id. If the employer is able to articulate such a reason, the plaintiff must then show that the proffered reason was a pretext for a racially discriminatory decision. Id. at 804-05. To show pretext, the plaintiff's evidence must either "(1) cast[] sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or (2) allow[] the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994).

The District Court determined that Gerard established a prima facie case of

5

discrimination, and the burden then shifted to defendants to articulate a legitimate, nondiscriminatory reason for terminating Gerard. The court concluded that defendants offered sufficient evidence that Atlantic Northstar had discontinued its real estate development business in the U.S. Virgin Islands and Gerard's services were therefore not needed. The District Court then explained that Gerard had offered no evidence to show that Atlantic Northstar's reason for firing her was pretextual. Specifically, Gerard had not challenged the evidence presented by defendants regarding Atlantic Northstar's altered business strategy. Nor had she offered any evidence that defendants' decision to terminate her was based on her race or ethnicity. The District Court observed that Gerard had not "produced any evidence that [Paoa] made any discriminatory comments toward [her] or otherwise discriminated against her while she was an employee." Supplemental Appendix (Supp. App.) 51.

According to Gerard, the District Court "erred by grounding its holding solely on the legitimacy of Atlantic's business decision to reduce its workforce." Appellant Br. at 13. Gerard argues that "[t]hat isn't the dispositive issue. Rather, the issue is why, after deciding to reduce its workforce, Atlantic fired Gerard instead of a similarly situated white worker." Id.

Contrary to Gerard's assertions, the District Court correctly concluded that Gerard's claim that the company decided to terminate her based on her race and ethnic identity was unsupported by the record. Once the company decided not to invest in

6

Virgin Islands real estate, Gerard's position was no longer necessary. Gerard presented no evidence to the contrary. Furthermore, Gerard failed to offer any evidence that Atlantic Northstar retained a similarly situated white employee, but terminated her. The record does not support a finding that Bishop performed the same job as Gerard. Bishop's responsibilities were more clerical than Gerard's. In addition, Gerard earned a higher salary than Bishop, and unlike Bishop, Gerard received commissions on rents collected, sales of land and real estate, and purchases of real property. Because Gerard failed to present any evidence to rebut Atlantic Northstar and Bridge Capital's proffered explanation, the District Court properly granted summary judgment and dismissed Gerard's claims.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.